## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SHERWOOD CONSTRUCTION COMPANY, INC. | § § § | |
| **Plaintiff,** | § | |
| V. | § § | CASE NO. 5:09-cv-01395-HE |
| AMERICAN HOME ASSURANCE COMPANY and AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY | § § § § § § | |
| **Defendants.** | § § | |

## DEFENDANTS' EXPERT WITNESS REPORT

Respectfully submitted,

s/Ellen Mary Van Meir
Ellen Mary Van Meir
Pro Hac Vice
TX Bar No. 00794164
evanmeir@thompsoncoe.com
Linda M. Szuhy, OBA # 17905
lszuhy@thompsoncoe.com
THOMPSON, COE, COUSINS & IRONS, LLP
700 N. Pearl Street, Suite 2500
Dallas, Texas 75201
(214) 871-8200
(214) 871-8209 - FAX

- and –

Michael L Carr
OBA # 17805
mikecarr@holdenoklahoma.com
Sean E. Manning
OBA # 18961
seanmanning@holdenoklahoma.com
HOLDEN, CARR & SKEENS-TULSA
15 E Fifth Street, Suite 3900
Tulsa, OK 74103
(918) 295-8888
(918) 295-8889 - FAX

COUNSEL FOR DEFENDANTS AMERICAN
HOME    ASSURANCE    COMPANY    and
AMERICAN    SPECIALTY    LINES
INSURANCE COMPANY n/k/a CHARTIS
SPECIALTY INSURANCE COMPANY

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that on this 22nd day of February 2011 a true and correct copy of the above and foregoing document was served via electronic notification using the ECF System for filing and transmittal of Notice of Electronic Filing to the following ECF registrants:

Mark A. Engel
mansell-engel@coxinet.net
Steven S. Mansell
mansell-engel@coxinet.net
Kenneth G. Cole
mansell-engel@coxinet.net
**MANSELL ENGEL & COLE**
101 Park Avenue, Suite 665
Oklahoma City, OK  73102

s/ Linda M. Szuhy
Linda M. Szuhy

# WELCH & SMITH, P.C.

**LAWYERS**
6440 AVONDALE DRIVE
SUITE 206
OKLAHOMA CITY, OK 73116
TELEPHONE: (405) 286-0801
FACSIMILE: (405) 286-0301
E-MAIL: WS@WELCHSMITH.COM

**MORT G. WELCH**
MWELCH@WELCHSMITH.COM

**SHERRY L. SMITH**
SSMITH@WELCHSMITH.COM

February 21, 2011

Ms. Linda M. Szuhy
Thompson, Coe, Cousins & Irons, LLP
700 N. Pearl Street
Suite 2500
Dallas, TX 75201

RE:  *Sherwood Construction v. American Home Assurance Co., et al.,*
     Case No. 5:09-CV-01395-HE, U.S.D.C. for the Western District of Oklahoma

Dear Ms. Szuhy:

This report is submitted pursuant to Rule 26(a)(2)(B), Federal Rules of Civil Procedure, in my capacity as an expert witness on behalf of your clients, the defendants American Home Assurance Company (AHAC) and American International Specialty Lines Insurance Company (AISLIC), in the case referenced above.

## I.  EDUCATION.

I received a bachelor of arts degree with special distinction from the University of Oklahoma in 1972.  I received a juris doctorate degree from the University of Texas School of Law in 1975.

## II. EXPERIENCE AND QUALIFICATIONS.

I have been continuously engaged in the practice of law, almost exclusively in civil law matters since 1975.  I was employed in 1975 and 1976 by a general practice law firm in Harlingen, Texas.  From 1976 to 1978, I was an associate with Cooper, Stewart, Elder and Abowitz, in Oklahoma City, a civil litigation firm which handled many cases involving bodily injury tort and insurance claims.  In 1978 I was a founder of Abowitz and Welch, and was a shareholder in this law firm, later known as Abowitz, Welch and Rhodes, until 1995.  In 1995, I was a sole practitioner.  In 1996 I formed another law firm, Welch, Jones & Smith, with Laurie W. Jones and Sherry L. Smith.  In 2000 this firm became Welch and Smith, when Ms. Jones became a full-time teacher at the Oklahoma City University School of Law.

My practice since 1976 has consisted of civil litigation of all types, including insurance coverage and insurance bad faith cases, and advising insurers, insureds, lawyers and public

February 21, 2011
Page 2

adjusters concerning rights and obligations under insurance policies. This advice has resulted in the preparation of over a thousand written opinions concerning a wide variety of issues arising as a result of claims made under insurance policies. I have reviewed and approved preparation of numerous insurance coverage opinions by other lawyers. I have also prosecuted and defended multiple insurance bad faith and breach of insurance contract claims under commercial general liability and excess policies.

My experience in insurance litigation and as an advisor to insurers, insureds, lawyers and public adjusters has involved issues under all of the coverage parts of umbrella and excess liability insurance policies, motor carrier policies, personal and business auto policies, homeowners and farmowners policies; professional liability policies; directors and officers liability and corporate indemnification policies; commercial general liability and property coverage forms; umbrella policies; and reinsurance contracts. I have drafted insurance policy provisions and revised other provisions. I have personally supervised hundreds of investigations of claims and personally conducted such investigations. I have trained adjusters and their supervisors concerning claims investigation techniques and procedures, the construction and interpretation of insurance policies, insurance case and statutory law, evaluation of bodily injury claims, and standards for claims handling intended to comply with the covenant of good faith and fair dealing. I have evaluated thousands of claim files for insurers and insureds (and their lawyers) to determine if the files include all information appropriate to make a determination concerning coverage, liability, and damages, and whether the investigation and handling of the claim is consistent with the obligation of good faith and fair dealing.

Cases resulting in published trial or appellate court opinions in which I was either trial or appellate counsel include the following: Akin v. Ashland Chem. Co., 156 F.3d 1030 (10th Cir. 1998) cert. den'd 526 U.S. 1112 (1994); Allstate Ins. Co. v. Fox, 139 F.3d 911 (Tab.), 1998 WL 77745; Angelo v. Armstrong World Industries, 11 F.3d 957 (10th Cir. 1993); Beeman v. Manville Corp. Asbestos Disease Compensation Fund, 496 N.W.2d 247 (Iowa 1983); Bristol v. Fibreboard Corp., 789 F.2d 846 (10th Cir. 1986); Case v. Fibreboard Corp., 1987 OK 79, 743 P.2d 1062; Cofer v. Morton, 1989 OK 159, 784 P.2d 67; Coleman v. Turpen, 697 F.2d 1341 (10th Cir. 1982), app. after remand, 827 F.2d 667 (10th Cir. 1987); First Financial Ins. Co. v. Roach, 80 F.3d 420 (10th Cir. 1996); Fisher v. Owens Corning Fiberglass Corp., 868 F.2d 1175 (10th Cir. 1989); Fleming v. Hall, 1981 OK 155, 638 P.2d 1115; Grain Dealers Mut. Ins. Co. v. Farmers Alliance Mut. Ins. Co., 298 F.3d 1178 (10th Cir. 2002); GuideOne America Ins. Co., Inc. v. Shore Ins. Agy., Inc., ___ OK CIV APP ___, ___ P.3d ___ (Feb. 10, 2011) (rel'd for pub. by order of the Court of Civil Appeals); Horace Mann Ins. Co. v. Johnson, 953 F.2d 575 (10th Cir. 1991); Huff v. Fibreboard Corp., 836 F.2d 473 (10th Cir. 1987); Kerr-McGee Corp. v. Admiral Ins. Co., 1995 OK 102, 905 P.2d 760; Lindsey v. Dayton-Hudson Corp., 592 F.2d 1118 (10th Cir. 1979), cert. den'd. 444 U.S. 856 (1979); Livengood v. Thetford, 681 F.Supp. 695 (W.D. Okla. 1988); Oklahoma Farmers Union Mut. Ins. Co. v. John Deere Ins. Co., 967 P.2d 479 (Okla. Civ. App. 1998); Sargent v. Central Nat'l Bank & Trust Co. of Enid, Oklahoma, 809 P.2d 1298 (Okla. 1991); Short v. Oklahoma Farmers Union, 619 P.2d 588 (Okla. 1980); Snethen v. Oklahoma State Union of the Farmers' Edu. and Coop. Union of Am., 664 P.2d 377 (Okla. 1983); State Farm Mut. Ins. Co. v. Schwartz, 933 F.2d 848 (10th Cir. 1991);

February 21, 2011
Page 3

Takagi v. Wilson Foods Corp., 662 P.2d 308 (Okla. 1983); Tax Investments Concepts Inc. v. McLaughlin, 670 P.2d 981 (Okla. 1982); Thiry v. Armstrong World Industries, Inc., 661 P.2d 515 (Okla. 1983); Timberlake Const. Co. v. U.S. Fid. & Guar. Co., 71 F.3d 335 (10th Cir. 1995); Trinity Univ. Ins. Co. v. Broussard, 932 F.Supp. 1307 (N.D. Okla. 1996); Vilseck v. Fibreboard Corp., 861 S.W.2d 659 (Mo. App. 1993); Weber v. State ex rel. Dept. of Human Serv., 839 P.2d 672 (Okla. Civ. App. 1990); Wilson and Co. v. Reed, 603 P.2d 1172 (Okla. Civ. App. 1979); Wilson Foods Corp. v. Noble, 613 P.2d 485 (Okla. Civ. App. 1980); and Wilson Foods Corp. v. Porter, 612 P.2d 261 (Okla. 1980).

I participated in drafting the anti-stacking provisions of auto UM coverage subsequently upheld by the Oklahoma appellate courts in Withrow v. Pickard, 905 P.2d 800 (Okla. 1995); Breakfield v. Oklahoma Farmers Union Mut. Ins. Co., 910 P.2d 991 (Okla. 1995); and Kinder v. Oklahoma Farmers Union Mut. Ins. Co., 943 P.2d 617 (Okla. Civ. App. 1997). I have drafted many other types of clauses for use in various insurance policies, including insurance agents professional liability, umbrella/excess liability, commercial general liability, commercial property, auto, homeowners, farmowners, and dwelling policies. I have prepared drafts of entire business and personal auto policies, additional insured endorsements and "other insurance" clauses.

I was a member of the State Bar of Texas from 1975 and continuing for several years until I discontinued my membership after moving to Oklahoma to practice. I have been a member of the Oklahoma Bar Association since 1976. I am admitted to practice in all federal district courts in Oklahoma, the Tenth Circuit Court of Appeals, and the United States Supreme Court. I have also been admitted to practice *pro hac vice* in several trial and appellate courts outside of Oklahoma, including federal and state trial courts in Arkansas, Kansas, Missouri, Illinois, Arizona, Pennsylvania, California, New Jersey, New Mexico, Ohio and Texas. I have also been admitted *pro hac vice* before the Supreme Court of Iowa, and the Missouri, Illinois and Kansas intermediate appellate courts.

I am a member of the International Association of Defense Counsel, the American Bar Association, its Tort and Insurance Practice Section, and the Defense Research Institute. I was for many years a member of the Oklahoma Association of Defense Counsel.

I have lectured and prepared seminar materials for continuing legal education programs sponsored by Oklahoma Bar Association, Oklahoma Association of Defense Counsel, Oklahoma Trial Lawyers Association, University of Oklahoma School of Law, Oklahoma City University School of Law, and The Conference on Consumer Finance Law. Selected titles include: *Allocation of Fault-Identifying All Angles*, OBA CLE (Feb. 1989); *Identifying and Using Insurance Coverages Commercial Liability*, OBA CLE (Feb. 1990); *Documenting the Agreement,* OBA CLE (Dec. 1991 and Mar. 1995); *Replacement Cost Property Insurance Coverage Without Replacement: Coblentz v. Oklahoma Farm Bureau Mut. Ins. Co.*; The Conf. on Cons. Fin. Law (Dec. 1996); *There are Many People Who Want Your Client's UM Money: Pitfalls in the Settlement of UM Claims*, OBA & Oklahoma Insurance Department approved CE (Oct. 2009); *Substantial Certainty Tort Claims By Injured Employees Against Their Employers: What Workers Compensation Professionals Should Know*, 11th Annual Spring Insurance Update Seminar (April, 2010,

February 21, 2011
Page 4

Oklahoma City/Dallas), an Oklahoma Insurance Department approved CE; and *Basic Elements of Auto Liability Coverage and Case Law Restrictions, What Must be Proved to Prevail on a UM Claim, The Interface Between Auto Liability and UM Coverages when the Claim's Value Potentially Exceeds the Liability Coverage Limit,* Last Minute Continuing Legal Education (Leflore County Bar Ass'n. Dec. 16, 2010). I was program planner and moderator for the OBA and Oklahoma Insurance Department approved CE Seminar, *What The Other UM Seminars Didn't Tell you: How To Settle And (If All Else Fails) Try UM Cases* (Oct. 2009).

I have presented client positions on insurance coverage issues to the Oklahoma Insurance Department and advised that department informally on insurance coverage issues. I have participated in drafting proposed legislation relating to insurance in Oklahoma and Idaho. This includes bills in various sessions of the Oklahoma legislature to amend the Oklahoma Declaratory Judgment Act, 12 O.S. §1651, to permit declaratory judgments concerning issues arising under liability insurance policies. The Act was amended, effective November 1, 2004, to permit liability insurance policy declaratory judgment actions, as the courts have subsequently held in Knight v. Miller, 195 P.3d 372 (Okla. 2008) and Equity Ins. Co. v. Garrett, 178 P.3d 211 (Okla. Civ. App. 2008). I also participated in the revision of the motor vehicle insurance laws in Title 47 of the Oklahoma Statutes contained in Senate Bill 1161, which was passed by the first regular session of the 2009 Legislature.

## III. PRIOR TESTIMONY.

I have testified by deposition as an expert witness in the following cases:

Allen v. Lynn Hickey Dodge, No. CJ-96-6076, District Court of Oklahoma County, Oklahoma, on February 7, 2003 for the plaintiffs and their attorney, Ed Abel; Anders v. GEICO, No. CJ-2002-6387, District Court of Tulsa County, Oklahoma, on September 18 and September 19, 2003 for the defendant GEICO and its attorney, Jerry Pignato; Arrow Exterminators Inc. v. Mid-Continent Cas. Co., No. CJ-2000-1558, District Court of Tulsa County, Oklahoma, on June 3, 2004 for the defendant, Mid-Continent Casualty Co. and its attorney, Roger Butler; GuideOne Mut. Ins. Co. v. Smith, No. CIV-03-1087-F, United States District Court for the Western District of Oklahoma, on October 28, 2004 for the defendants and their attorney, Joe E. White, Jr.; Gutkowski v. Oklahoma Farmers Union Mut. Ins. Co., No. CJ-04-7542-62, District Court of Oklahoma County, Oklahoma on November 16, 2005 for the defendant and its attorney, David Donchin; Horn v. GEICO, No. CIV-02-0058, United States District Court for the Western District of Oklahoma, on October 10, 2002 for the defendant GEICO and its attorneys, Baker and McKenzie; Hutchinson v. United Services Auto. Assoc., No. C-98-596, District Court of Pittsburg County, Oklahoma for the defendant, Oklahoma Farmers Union Mutual Insurance Company and its attorney, W. G. "Gil" Steidley; Melton Truck Lines Inc. v. Indemnity Ins. Co. of North America, No. CV-263-JHP-SHA, Northern District of Oklahoma, on August 2, 2007 for the defendant and its attorney, Robert Rivera, Jr. of Susman, Godfrey LLP; Ward v. Oklahoma Farmers Union Mut. Ins. Co., No. C-04-603, District Court of Pontotoc County, on September 8, 2005 for the defendant and its attorney, David Donchin; Cordova

February 21, 2011
Page 5

v. Oklahoma Farm Bureau Ins. Co. and Colin McNatt, No. CJ-2008-1557, District Court of
Oklahoma County on November 16, 2009 for plaintiff and her attorney Gregg W. Luther
of West Law Firm; Cearley v. Great American Ins. Co. of New York, No. CJ-2008-1202,
District Court of Creek County on January 21, 2010 for plaintiff and his attorneys, W.G.
"Gil" Steidley and Whitney Eschenheimer, Steidley & Neal; and Tate v. Allstate Ins. Co.,
Case No. 10-CV-104-R, United States District Court, Western District of Oklahoma on
February 16, 2011, for the plaintiff and his attorney, Gregg W. Luther of West Law Firm.

I have testified at trial as an expert witness in the following cases:

Anders v. GEICO; Gutkowski v. Oklahoma Farmers Union Mut. Ins. Co.; and Nelson
v. Granite States Ins. Co., Case No. CIV-08-1165, United States District Court for the
Western District of Oklahoma.

## IV.  COMPENSATION.

I am charging your firm $275.00 per hour for my services as an expert witness on
behalf of your client in this case.

## V.  DOCUMENTS REVIEWED.

I have reviewed the following: filings in the following cases in the District Court of
Canadian County, Oklahoma, *Brummett v. Central Trucking, Inc.*, No. CJ-2005-22, *Tyrelle
v. Central Trucking, Inc.*, No. CJ-2005-16, *Prock v. Central Trucking, Inc.*, No. CJ-2005-3,
and *Derieg v. Central Trucking*, No. CJ-2005-36 (all consolidated for discovery as *In Re
I40 Collision Litigation*, Master File No. CJ-2005-1); motions, orders and pleadings in this
case; commercial general liability insurance policy issued by AHAC to National
Equipment Services, Inc. (NES); commercial umbrella policy issued by AISLIC to NES;
commercial general liability policy issued by Liberty Mutual Fire Insurance Company
(Liberty Mutual) to Sherwood Construction, Inc. (Sherwood); excess policy issued to
Sherwood by Great American Insurance Company (Great American); documents produced
by Sherwood bates stamped Sherwood 00001-00044, documents produced by defendants
in this case bates stamped AHAC/AISLIC 49-527; and various statutes, and court
decisions I considered relevant to the issues discussed in this report and which are
identified in this report.  I recently received literally thousands of additional documents
which, due to a recent illness, I have not yet had an opportunity to review.  I believe these
are documents produced by Sherwood to the defendants.  In addition, I am informed no
depositions have been taken in this case so obviously I have not reviewed any.

To the extent my review of additional documents or depositions which may be taken
subsequent to the date of this report changes or alters my opinion, I will supplement this
report.

February 21, 2011
Page 6

## VI.  EXHIBITS.

At the present time I plan to use as exhibits portions of the insurance policies identified in section V, March 21, 2007 email from Lew Tait, Jr. to Dave Dial, to which is attached a copy of a March 20, 2007 letter signed jointly by counsel for the plaintiffs in the Canadian County cases and addressed to Mr. Tait (AHAC/AISLIC 147-157). However, at this stage of the case I have not completely determined the exhibits which will be used during my testimony.  To the extent additional exhibits are identified for use in my testimony, I will supplement this report.

## VII.  LEGAL CONTEXT OF MY OPINIONS.

You asked me generally to address the allegations made by Sherwood that AHAC and AISLIC breached the covenant of good faith and fair dealing in their response to the demand of Sherwood (and Sherwood's insurers, Liberty Mutual and Great American) to defend Sherwood in the Canadian County cases, and to settle the claim against Sherwood made in the Canadian County cases. In this report I use the shorthand phrase "bad faith" to refer to a breach of the covenant of good faith and fair dealing, as does the Supreme Court. See Brown v. Patel, 157 P.3d 117, 121 n.5 (Okla. 2007). I have addressed certain required elements of a bad faith claim, including whether the actions of AHAC and AISLIC "were unreasonable under the circumstances", and whether they "failed to deal fairly and act in good faith toward [Sherwood] in handling the" demands of Sherwood and its insurers to defend Sherwood and to settle the Canadian County cases on behalf of Sherwood.[1]  In making this assessment I have been required to consider applicable law (as well as a variety of insurance claims practices and standards and my own personal experience) because the covenant of good faith and fair dealing encompasses a number of implied in law duties created by statutes and case law.[2]  Likewise, in this case it appears a significant source of the dispute is the proper interpretation of the relevant insurance policies and applicable law.  Thus, a primary issue is – does a legitimate dispute exist concerning whether Sherwood was entitled to a defense by AHAC or AISLIC, and concerning whether those insurers should have settled the Canadian County cases on behalf of Sherwood.[3]

---

[1] *Id.* 157 P.3d at 129.

[2] *Id.* 157 P.3d at 121-22.

[3] Legitimate disputes may exist concerning the status of applicable law or how it applies to a given state of facts, or concerning the proper interpretation of an insurance policy.  *See e.g.*, Ball v. Wilshire Ins. Co., 221 P.3d 717, 723 (Okla. 2009) ("If there is a legitimate dispute concerning coverage or no conclusive precedential legal authority requiring coverage, withholding or delaying payment is not unreasonable or in bad faith"); Skinner v. John Deere Ins. Co., 998 P.2d 1219, 1223 (Okla. 2000) ("There was a legitimate dispute concerning the amount of UM coverage imputed [by operation of law] to the policy and the amount to which [the] plaintiff was entitled); Duensing v. State Farm Fire & Cas. Co., 131 P.3d 127, 138 (Okla. Civ. App. 2005); Lindsay v. National Lloyds Ins. Co., 2010 WL 329754 at *7 (W.D. Okla. March 29, 2010).

February 21, 2011
Page 7

## VIII.  LIMITATIONS ON MY OPINIONS.

I recognize my role as an expert witness is not to tell a jury what law applies in this case; the Court has this responsibility.  Likewise, my opinions do not address the motives or state of mind of any witness since no expert is a qualified "mind reader", and juries are quite capable of deciding credibility issues without experts telling them what someone's motive, state of mind, or intent was.[4]  I also recognize the Court has discretion to exclude any expert opinion that an insurer did or did not act in bad faith, or that its conduct did or did not violate a particular law or insurance industry standard.[5]

## IX. BACKGROUND INFORMATION.

This case is the tail end of a tragedy which started on November 4, 2004 when a truck operated by James Washman westbound on I-40 drove into a construction zone just east of El Reno without braking or stopping.  The truck struck one vehicle and others were impacted.  Fires started.  In the end four people died and one who was injured survived. The initial collision occurred in a construction zone where Sherwood was performing a contract with the Oklahoma Department of Transportation (ODOT) to resurface about 3 miles of pavement on I-40.  Sherwood had, in turn, subcontracted with Advance Warnings, Inc. (a company related to NES and otherwise referred to as NES in this report), for placement of various forms of signage to alert drivers to the construction zone and the fact westbound traffic had been reduced to one lane.

A series of lawsuits were filed by the survivors of those who died and by the injured person in the District Court of Canadian County.  The cases were consolidated for discovery purposes as *In Re I40 Collision Litigation*.  The defendants were the truck driver, Washman, his employer, Central Trucking, Inc., Central's motor carrier insurer, Illinois National Insurance Company, Sherwood, AWINC Corp., ODOT, and NES Traffic Safety, Inc.[6]  Because the truck driver and trucking company for whom he worked were undisputedly underinsured, with only $1 million in coverage, and ODOT's potential liability was capped by the Governmental Tort Claims Act and also made several instead of joint and several by that Act, the focus in the cases was on Sherwood and NES.

---

[4] This view is in accord with those courts which have held experts may not express opinions in bad faith cases concerning such matters.  *See e.g.,* Johnson v. Gov't Employees Ins. Co., 2008 WL 5545621 at *2-3 (W.D. Okla. Sept. 5, 2008); North Am. Spec. Ins. Co. v. Britt Paulk Ins. Agy., Inc., 2007 WL 2688167 at *3 (E.D. Okla. Sept. 10, 2007).

[5] *See e.g.,* Thompson v. State Farm Fire & Cas. Co., 34 F.3d 932, 939-40 (10th Cir. 1994); American Comm. Ins. Co. v. Harris, 2009 WL 130225 at *1 (W.D. Okla. Jan. 16, 2009); Johnson v. Government Emp'ees Ins. Co., 2008 WL 4186216 at *2 (W.D. Okla. Sept. 8, 2008) and 2008 WL 5545261 at *3; Seikel v. American Med. Sec. Life Ins. Co., 2007 WL 4859272 at *3-4 (W.D. Okla. Feb. 26, 2007); Matlock v. Texas Life Ins. Co., 2006 WL 5097313 at *1 (W.D. Okla. Feb. 8, 2006); and Payne v. GEICO Indem. Co., 2002 WL 34439222 at *2 (W.D. Okla. May 17, 2002).

[6] For convenience it is easier to refer to all of the companies under the umbrella of NES, including AWINC, Advanced Warnings, and NES Traffic Safety, as NES.

February 21, 2011
Page 8

Sherwood filed a cross claim against NES based upon an indemnity clause in their subcontract. Although all of the wrongful death and the one injury case have been settled, the cross claim apparently remains pending in the District Court of Canadian County.

At the time of the incidents in question Sherwood had a commercial general liability policy issued by Liberty Mutual which provided a $1 million per occurrence and $2 million general aggregate limits, with a $100,000 per occurrence deductible. The Commercial General Liability Coverage Form of this policy, section I.a, states Liberty Mutual has a "right and duty to defend the insured against any 'suit' seeking damages because of 'bodily injury' or 'property damage' to which the insurance applies". Liberty Mutual provided Sherwood with a defense to the Canadian County case, initially through a salaried lawyer employee of Liberty Mutual, and then through both the salaried employee and outside counsel. Sherwood also had an excess policy with Great American which provided an occurrence and general aggregate limit of $10 milllion. At some point in the Canadian County cases Great American hired yet another law firm to represent Sherwood. Consequently, there were actually three sets of lawyers representing Sherwood in the Canadian County cases.

NES had a commercial general liability policy issued by AHAC. This policy has a $500,000 each occurrence limit, and a $16 million general aggregate limit, but it also contains a Self-Insured Retention (SIR)[7] of $500,000 pursuant to an endorsement (AHAC 56) which modifies the basic insuring agreement in the *Commercial General Liability Coverage Form*, AHAC 14 §I.1. As in the Liberty Mutual policy, the original *Commercial General Liability Coverage Form* of the AHAC policy states AHAC has a "right and duty to defend the insured". However, the SIR Endorsement changes this in a significant respect, omitting the obligation or duty to defend:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**SELF-INSURED RETENTION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

**I. INSURING AGREEMENTS**

SECTION I – LIABILITY COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 1. – INSURING AGREEMENT, paragraph a. is deleted in its entirety and replaced with the following:

---

[7] "The term 'retention' (or 'retained limit') refers to a specific sum or percentage of loss that is the insured's initial responsibility and must be satisfied *before* there is any coverage under the policy. It is often referred to as a 'self-insured retention' or 'SIR'". Forecast Homes, Inc. v. Steadfast Ins. Co., Cal.Rptr.3d 200, 206 (App. 2010).

February 21, 2011
Page 9

    a.  We will pay on behalf of the insured those sums in excess of the Retained Limit that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right but not the duty to defend any "suit" seeking those damages. We may at our discretion and expense, participate with you in the investigation of any "occurrence" and the defense or settlement of any claim or "suit" that may result. But:

       (1) The amount we will pay for damages is limited as described in SECTION III – LIMITS OF INSURANCE; and

       (2) Our right to defend, if we so exercise it, ends when we have exhausted the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under ALLOCATED LOSS ADJUSTMENT EXPENSES – COVERAGES A AND B.

                          \*\*\*

## III. LIMITS OF INSURANCE

SECTION III – Limits of Insurance is amended to add the following:

The Limits of Insurance for each of the Coverages provided by this policy will apply in excess of a Self-Insured Retention (referred throughout as the "Retained Limit").

The Retained Limit, applying only to damages for "occurrences" or offenses covered under this policy, is $500,000 per "occurrence" or offense.

Subject to additional Allocated Loss Adjustment Expenses, the Retained Limit is the most an insured will pay for:

A.  The sum of all damages under Coverage B because of all "personal and advertising injury" sustained by any one person or organization; or

B.  The sum of all damages under Coverage A and medical expenses under Coverage C, because of all "bodily injury" and "property damage" arising out of any one occurrence.[8]

The effect of the SIR in the amended limits of liability section of the *Commercial General Liability Coverage Form*, §III, is to make the AHAC coverage akin to excess

---

[8] AHAC 56 & 58.

February 21, 2011
Page 10

insurance because AHAC's duty to pay arises only after the $500,000 SIR is exhausted by payments of settlements or judgments.[9]  However, NES also had a true umbrella/excess policy.  I say "umbrella/excess" because there is much confusion in the use of terminology. Umbrella insurance specifically refers to coverage for a claim that is **not** covered by primary insurance, the effect being the umbrella coverage "drops down" and becomes primary insurance.  Excess coverage is simply additional coverage which applies to the same claim as the primary coverage, but only after the primary insurance coverage is paid out or exhausted.  *See e.g.,* Powerine Oil Co. Inc. v. Superior Ct., 118 P.3d 589, 603 n.9 (Cal. 2005).   Many excess policies include "umbrella" coverage.   See AISLIC 5, Commercial Umbrella Policy Form §II.A.

The AISLIC payment obligation is triggered when an insured is held liable to pay a sum in excess of the "Retained Limit", a defined phrase including an SIR of $1 million plus the amount of insurance ($500,000) and the SIR ($500,000) in the AHAC policy plus the limits of any other policies applicable to the particular claim against an insured.  *Id.* §I, End. 25, *Retained Limit Amendatory End.* §II.E, AISLIC 55; End. 28, AISLIC 61. However, the policy expressly says the Retained Limit is not exhausted by payment of defense costs.  In other words, the Retained Limit is used up only by payments of judgments and settlements against an insured. See End. 25, §II.E, AISLIC 55.

Finally, the AISLIC policy provides AISLIC "shall have the right and duty to defend any claim or suit seeking damages covered by the terms and conditions of this policy when the applicable limits listed in the Schedule of Retained Limits have been exhausted by payment of claims to which this policy applies."  *Retained Limit Amendatory End.* §III, AISLIC 56.

The subcontract between Sherwood and NES required NES to have Sherwood added as an insured on its policies in specific limits.  The clause does not address whether this requirement can be fulfilled by NES retaining a portion of the liability of Sherwood to be insured, as for example, pursuant to an SIR like that in the AHAC policy.  The AHAC policy contains an Additional Insured Endorsement which adds as an insured an organization to which NES is required by a contract to furnish insurance "of the type provided by this policy".  *Additional Insured – When Required Under Contract Or Agreement Endorsement,* AHAC 42.  Additional insured status is, however, limited in the endorsement.  A person or organization is an additional insured "only with respect to liability arising out of your [NES's] operations or premises owned by or rented to you." *Id.* The coverage under this endorsement is also limited to the lesser of "1. The coverage and/or limits of this policy, or 2. The coverage and/or limits required by said contract or agreement" between Sherwood and NES.  This clause limits the amount of insurance for an additional insured to the amount the named insured contracted to provide the additional insured (if less than the policy limit), and minus any other insurance applicable to the

---

[9] *See e.g.,* General Star Indem. Co. v. Superior Ct., 52 Cal.Rptr.2d 322, 325 (App. 1996); City of Oxnard v. Twin City Fire Ins. Co., 44 Cal.Rptr.2d 177, 179-80 (App. 1995); Forecast Homes v. Steadfast Ins. Co., 105 Cal.Rptr.3d 200, 206 (App. 2010); Koch Develop. Co., Inc. v. Clarendon Am. Ins. Co., 313 Fed.Appx. 928, 930 (8th Cir. 2009).

February 21, 2011
Page 11

additional insured which is at a lower level than the excess policy. <u>Bovis Lend Lease</u>
LMB, Inc. v. Great Am. Ins. Co., 855 N.Y.S.2d 459, 472-73 (App. Div. 2008).

The AISLIC policy contains an identical additional insured endorsement. See
endorsement 25, *Retained Limit Amendatory End.* §5, AISLIC 57.

Liberty Mutual demanded that NES's insurers defend Sherwood but they declined. At
some point all of the Canadian County plaintiffs settled with the defendants. It appears the
settlement of the claims against Sherwood was for $3 million, $1 million being contributed
by Liberty Mutual under its primary policy and $2 million contributed by Great American
under the excess policy of Sherwood. It is unclear from what I have reviewed whether
Sherwood in fact had to pay any of the deductible under the Liberty Mutual policy as part
of the settlement of the Canadian County cases. It also appears Liberty Mutual claims to
have expended somewhere in the neighborhood of $233,000 in the defense of Sherwood in
the Canadian County Cases, for which Liberty Mutual previously made demand for
reimbursement upon AHAC. See April 28, 2002 Ackley-Marshall letter. AHAC/AISLIC
49.

NES's insurers, together with NES, also settled the Canadian County claims against
NES.

## X. ALLEGATIONS OF BAD FAITH AGAINST AHAC FOR REFUSING TO DEFEND SHERWOOD.

It appears from the report of Sherwood's expert that Sherwood is asserting AHAC
and AISLIC have a duty to defend Sherwood, their refusal to do so is not only a breach of
the NES policies (under which Sherwood contends it is an additional insured), but is a
breach of the covenant of good faith and fair dealing owed to Sherwood. AHAC was
reasonable in concluding it was not obligated to defend Sherwood (assuming Sherwood
demonstrated it was an additional insured, an issue discussed *infra.*) for several reasons.
First, the existence of a duty to defend depends solely upon whether the policy says there is
such a duty; there is no "law" mandating a duty to defend. *See e.g.,* Ball v. Wilshire Ins.
Co., 221 P.3d 717, 723 (Okla. 2009); Selective Ins. Co. of S.C. v. City of Charleston, 2007
WL 3129578 at *7 (C.D. Ill. Oct. 24, 2007).[10] Under the *Self-Insured Retention
Endorsement* of the AHAC policy, AHAC simply has no duty to defend an insured. The
new Section I.a completely replaces the standard insuring agreement in section I.1.a of the
*Commercial General Liability Coverage Form* and states: "We will have the right **but not
the duty** to defend...." (emp. add.).[11] There is an obvious difference between a right and a
duty. The latter is obligatory, the former is not. The courts have uniformly agreed,
holding that a policy conferring a right to defend but not imposing a duty to defend, does
not require the insurer to defend (assuming the case is otherwise one that would satisfy the
requirements for a defense). *See e.g.,* East Florida Hauling, Inc. v. Lexington Ins. Co., 913

---

[10] I understand there may be choice of law issues in this case but, unless otherwise noted, my
discussion applies under the law of whichever state will apply to the interpretation of the policies.
[11] This language is not even mentioned in the report of Sherwood's expert, causing me to wonder if
Sherwood furnished him the complete AHAC policy.

February 21, 2011
Page 12

So.2d 673, 677-78 (Fla. App. 2005) *rev. den'd* 931 So.2d 599 (Fla. 2006); Genaeya Corp. v. Harco Nat'l Ins. Co., 991 A.2d 342, 347 (Pa. Super. 2010); Ohio Cas. Ins. Co. v. Carman Cartage Co., Inc., 636 N.W.2d 862, 867 (Neb. 2001); Cornhusker Agricultural Assoc. v. Equity Gen. Ins. Co., 392 N.W.2d 366, 372 (Neb. 1986); Great Western Cas. Co. v. Flandrich, 605 F.Supp.2d 955, 978 (S.D. Ohio 2009); Outboard Marine Corp. v. Liberty Mut. Ins. Co., 536 F.2d 730, 736 (7ᵗʰ Cir. 1976); B&D Appraisals v. Gaudette Machinery Movers, 752 F.Supp. 554, 556 (D. R.I. 1990); City of Peoria v. Underwriter's at Lloyd's London, 290 F.Supp. 890, 892-93 (S.D. Ill. 1968); Centennial Ins. Co. v. Transitall Serv., Inc., 2001 WL 289879 at *3 (N.D. Ill. March 15, 2001); Certain Underw. at Lloyd's v. Bely, 2009 WL 2848995 at *3 (N.D. Ga. Aug. 28, 2009); Cincinnati Ins. Co. v. Sierra Rock & Dirt, Inc., 2007 WL 690134 at *5 (D. S.D. March 2, 2007); City of Burlington v. Arthur J. Gallagher & Co., 944 F.Supp. 333, 337 (D. Vt. 1996); East Lake v. St. Paul Fire & Marine Ins. Co., 2008 WL 203392 at *5 (N.D. Ohio Jan. 22, 2008); Insurance Co. of West v. County of McHenry, 2002 WL 1803743 at *2 (N.D. Ill. Aug. 6, 2002); Jones v. Southern Marine & Aviation Underw., Inc., 888 F.2d 358, 362 (5ᵗʰ Cir. 1989); PT Indonesia Epson Indust. v. Orient Overseas Container Line, Inc., 2002 WL 561376 at *3 (S.D. Fla. April 11, 2002); RBC Dain Rauscher, Inc. v. Federal Ins. Co., 2003 WL 25836278 at *3-5 (D. Minn. Dec. 2, 2003); Underwriters v. Seaboard Marine, Ltd., 2009 WL 928719 at *5 (S.D. Fla. April 3, 2009); and Virginia Surety Ins. Co. v. RSUI Indem. Co., 2009 WL 4282198 at *7 (D. Ariz. Nov. 25, 2009). In sum, "[a]n insurer does not have a duty to defend if there is no contractual obligation to defend." 14 *Couch on Ins. 3ʳᵈ* §200:5.

Sherwood apparently believes insuring agreement I.1.a in the *Self-Insured Retention Endorsement*, does not apply to it because NES is the "you" in the policy, and has certain responsibilities for Allocated Loss Adjustment Expenses under section II of the endorsement. Sherwood also stresses the new insuring agreement in the endorsement provides AHAC with the option, at its expense, to "participate with you in the investigation of any 'occurrence' in the defense or settlement of any claim or suit that may result".

This is an entirely strained reading of the endorsement, taking references to NES, the "you" in the policy, out of context. Section I of the *Commercial General Liability Coverage Form* is the only place in the policy in which the defense of an insured is mentioned, other than in section I of the *Self-Insured Retention Endorsement*. As previously discussed, section I.1.a of the coverage form created both a right and duty to defend "the insured", while the same section in the endorsement creates only a right to defend "the insured". Thus, both versions of the insuring agreement refer to a defense of "the insured", and not just to NES. Accordingly, under the original section I.1.a insuring agreement AHAC had the right and duty to defend an additional insured, as Sherwood claims to be, and under section I.1.a of the endorsement, AHAC has a right but not a duty to defend an additional insured.

Sherwood's strained interpretation would actually place an additional insured in a worse position. The endorsement states that section I.1.a of the *Commercial General Liability Coverage Form* is **completely replaced** by section I.1.a of the endorsement. The only place where a duty to defend is mentioned is section I.1.a of the *Commercial General*

February 21, 2011
Page 13

*Liability Coverage Form.* But since this section has been replaced in the policy by the same section number of the endorsement, the only reference to a defense in the entire AHAC policy is in section I.1.a of the endorsement, and that provision clearly gives AHAC the right but does not impose the duty to defend "the insured". Thus, if section I.1.a of the endorsement does not apply to Sherwood, and only applies to NES as Sherwood argues, there is no other provision in the AHAC policy upon which Sherwood may base an argument that AHAC has a duty to defend it. This is because section I.1.a of the *Commercial General Liability Coverage Form* is, as stated, completely replaced by the same section in the endorsement.

This analysis completely distinguishes the dicta in American Nat'l Fire Ins. Co. v. The Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 796 N.E.2d 433 (Ill. App. 2003). The SIR endorsement in American Nat'l did **not** replace the insuring agreement of the policy. *Id.* 1143. The insuring agreement conferred both a right and imposed a duty on the insurer to defend an insured, including an additional insured. Thus, once the court found that the SIR endorsement applied only to the named insured, and not to the additional insured, the court could look to the original insuring agreement to conclude the insurer had a duty to defend the additional insured. Such is not the case under the AHAC policy because the original insuring agreement is completely replaced by the insuring agreement in the *Self-Insured Retention Endorsement.*

Since AHAC had no duty to defend Sherwood (assuming it was an additional insured), then the fact AHAC chose not to exercise its option to defend Sherwood (which was being defended by its own insurers) was imminently reasonable, and could not be a breach of any duty owed to Sherwood. This is certainly not a case in which an insured was left out in the cold without a defense because an insurer declined to provide one. Sherwood had three sets of lawyers provided by two of its insurance companies.

Since the AHAC policy did not obligate AHAC to defend Sherwood, no amount of additional investigation would have or should have changed the outcome because the outcome is determined by the clear language of the policy which negates a duty to defend. *See e.g.,* Boggs v. Great Northern Ins. Co., 659 F.Supp.2d 1199, 1214 n.16 (N.D. Okla. 2009) ("if the claims are indisputably outside the scope of coverage" in a duty to defend policy, "no additional investigation is necessary"). Thus, AHAC did not have to undertake any investigation to correctly conclude it had no duty to defend Sherwood.

## XI. ALLEGATIONS OF BAD FAITH AGAINST AISLIC FOR REFUSING TO DEFEND SHERWOOD.

AISLIC reasonably could conclude it had no duty to defend Sherwood because the conditions precedent to trigger such a duty were not satisfied. Unlike the AHAC general liability policy, the excess policy confers both "the right and duty to defend" on AISLIC under specifically defined circumstances:

3. Section II. Defense is deleted in its entirety and replaced by the following:

February 21, 2011
Page 14

    II.  Defense

        A.  We shall have the right and duty to defend any claim or Suit seeking damages covered by the terms and conditions of this policy when the applicable limits listed in the Schedule of Retained Limits have been exhausted by payment of claims to which this policy applies.

[*Retained Limit Amendatory End.* ¶3, AISLIC 56].

    This clause must be read in the context of AISLIC's obligation to pay indemnity on behalf of an insured:

Insuring Agreements

   I.  Coverage

      We will pay on behalf of the Insured those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay by reason of liability imposed by law or assumed by the Insured under an insured Contract because of Bodily Injury, Property Damage, Personal Injury or Advertising Injury that takes place during the Policy Period and is caused by an Occurrence happening anywhere in the world. The amount we will pay for damages is limited as described in Insuring Agreement III, Limits of Insurance.

      If we are prevented by law or statute from paying on behalf of the Insured, then we will, where permitted by law or statute, indemnify the Insured for those sums in excess of the Retained Limit.

***

   E.  Retained Limit

      We will be liable only for that portion of damages in excess of the limits listed in the Schedule of Retained Limits and then up to the amount not exceeding the Each Occurrence Limits as stated in the Declarations.

      The Retained Limits listed in the attached Schedule of Retained Limits shall apply whether or not the Insured maintains applicable underlying insurance listed in the Schedule of Underlying Insurance or other insurance providing coverage to the Insured applicable to a loss.

      Amounts received through such policies listed in the Schedule of Underlying Insurance or other insurance providing coverage to the Insured for payment of the loss may be applicable to reduce or exhaust the Retained Limit if such policies were purchased by the Named Insured to specifically apply as underlying insurance to this policy. However, in no event will amounts received through such policies listed in the Schedule of Underlying Insurance

February 21, 2011
Page 15

> or other insurance providing coverage to the Insured for the payment of
> Defense Expenses reduce the Retained Limit.
>
> The Retained Limits listed in the attached Schedule of Retained Limits shall not
> be reduced or exhausted by Defense Expenses.

[*Commercial Umbrella Policy Form* §I, AISLIC 5; *Retained Limit Amendatory End.* ¶E, AISLIC 55-56].

The *Other Insurance* clause reinforces the intent of the foregoing insuring agreements:

K.  Other Insurance

> If other valid and collectible insurance applies to a loss that is also covered by
> this policy, this policy will apply excess of the other insurance. However, this
> provision will not apply if the other insurance is specifically written to be excess of
> this policy. [*Commercial Umbrella Policy Form* §VI.K, AISLIC 18].[12]

Uniformly, the courts recognize that language like that quoted above means that the excess insurer has no duty to defend an insured until all underlying insurance, whether specifically identified in a schedule of the excess policy, or otherwise existing, has been exhausted by payment of judgments or settlements, and, in this particular case, when all applicable SIRs in the AHAC policy as well as the AISLIC policy have been exhausted by payment of judgments or settlements. *See e.g.,* United States Fid. & Guar. Co. v. Federated Rural Elec. Corp., 37 P.3d 828, 833-34 (Okla. 2006); Kajima Const. Serv. Inc. v. St. Paul Fire & Marine Ins. Co., 879 N.E.2d 305, 313 (Ill. 2007); United States Gypsum Co. v. Admiral Ins. Co., 643 N.E.2d 1226, 1260-61 (Ill. App. 1995); Occidental Fire & Cas. Co. of North Carolina v. Underwriters at Lloyd's London, 311 N.E.2d 330, 334-35 (Ill. App. 1974); Continental Cas. Co. v. Armstrong World Indust., Inc., 776 F.Supp. 1296, 1301 (N.D. Ill. 1991); Nabisco Inc. v. Transport Indem. Co., 192 Cal.Rptr. 207, 209-11 (App. 1983); Padilla Constr. Co., Inc. v. Transportation Ins. Co., 58 Cal.Rptr.3d 807, 810-11 & 821-22 (App. 2007); *Appleman on Ins.* §4909.85 at 453-54 (1981); 15 *Couch on Ins.* *3rd* §220.41.

These principles apply where, as here, a contractor and its insurers assert a subcontractor's excess insurance, under which the contractor is alleged to be an additional insured, should have paid before the general contractor's policies did. The courts routinely

---

[12] The last sentence of the *Other Insurance* clause refers to a higher-level policy than the AISLIC policy which specifically designates the AISLIC policy as underlying insurance. *E.g.,* National Farmers Union Prop. & Cas. Co. v. Farm & City Ins. Co., 689 N.W.2d 619, 623 (S.D. 2004); Treder ex rel. Weiger v. LST, L.P., 678 N.W.2d 555, 561 (Wis. App. 2004) *rev. den'd* 684 N.W.2d 137 (Wis. 2004); Allstate Ins. Co. v. Frank B. Hall & Co., 770 P.2d 1342, 1348 (Colo. App. 1989). I am unaware of a second level excess policy which specifically designates the AISLIC policy as underlying insurance. Thus, as in Bovis Lend Lease LMB, Inc. v. Great Am. Ins. Co., 855 N.Y.S.2d at 469, the exception in the Other Insurance clause does not apply.

February 21, 2011
Page 16

reject this argument even where the contractor's policies purport to be excess to the subcontractor's true excess policy. *See e.g.,* Bovis Lend Lease, 855 N.Y.S.2d at 466-69; Tishman Constr. Of NY v. Great Am. Ins. Co., 861 N.Y.S.2d 38, 41-42 (App. Div. 2008); North River Ins. Co. v. Grinnell Mut. Reins Co., 860 N.E.2d 460, 465-66 (Ill. App. 2006); Kajima Const. Serv. Inc. v. St. Paul Fire & Marine Ins. Co., 879 N.E.2d at 313-15.

I have not been furnished information to indicate that the applicable limits of the Liberty Mutual and Great American policies issued to Sherwood, plus the SIR and amount of insurance in the AHAC policy, plus the SIR in the AISLIC policy, have been exhausted by payment of settlements in the Canadian County cases. However, even if the settlement payments exhausted all of the underlying insurance and the SIRs, **there would then be nothing left for AISLIC to defend.** In other words, if the duty to defend was triggered by settlement payments to conclude the Canadian County cases, there were no cases left to defend once the duty to defend was triggered, as recently held in Axis Spec. Ins. Co. v. Brickman Grp. Ltd., LLC, 2010 WL 4720754 at *6 (E.D. Pa. Nov. 18, 2010) and Virginia Surety Ins. Co. v. RSUI Indem. Co., 2009 WL 4282198 at *4 (D. Ariz. Nov. 25, 2009).

As with the bad faith failure to defend allegations against AHAC, there is simply no basis to conclude AISLIC should have conducted a futile investigation to determine more than it needed to know to evaluate whether it had a duty to defend Sherwood. AISLIC knew the limits of the relevant policies. Until the cases in Canadian County were settled it knew these limits had not been exhausted. That is all AISLIC needed to know in order to reasonably conclude it never had a duty to defend Sherwood.

## XII.  ALLEGATIONS OF BAD FAITH RELATED TO COVERAGE.

Although difficult to follow, Sherwood's theory may be that AHAC and AISLIC committed bad faith by refusing to settle the Canadian County cases on Sherwood's behalf, even though Sherwood's insurers did so. If this claim is being made it appears to be based upon the contention that AHAC and AISLIC wrongfully concluded that Sherwood is not an additional insured in the NES and AISLIC policies. AHAC and AISLIC reasonably could have concluded Sherwood did not qualify as an additional insured. In this connection, it is important to keep clearly in mind that Sherwood also is suing NES pursuant to the indemnity clause in their subcontract. That NES may have some obligation to indemnify Sherwood does not mean, however, that Sherwood is an additional insured in NES's policies. *See e.g.,* Alex Robertson Co. v. Imperial Cas. & Indem. Co., 10 Cal.Rptr.2d 165, 168-69 (App. 1992); Jeffrey M. Brown Assoc., Inc. v. Interstate Fire & Cas. Co., 997 A.2d 1072, 1077 (N.J. App. Div. 2010) *certif. den'd* 6 A.3d 443 (N.J. 2010). This conclusion is consistent with the more basic principle that "[a]n insurer's undertaking *cannot* be altered or modified by an insured's agreement with a third party in the absence of the insurer's consent". Travelers Ins. Cos. v. Dickey, 799 P.2d 625, 628 (Okla. 1990). Thus, "the extent of coverage (including a given policy's priority vis-à-vis other policies) is controlled by the relevant policy terms, not by the terms of the underlying trade contract that required the named insured to purchase coverage". Bovis Lend Lease LMB, Inc. v. Great Am. Ins. Co., 855 N.Y.S.2d at 464. In other words, "'[a]n insurer's duties are defined by what **it** contracted to do, not by what **the insured** contracted to do.'" Jeffrey M.

February 21, 2011
Page 17

Brown Assocs., Inc. v. Interstate Fire & Cas., 997 A.2d at 1079, *quoting from* 2 Allan D. Windt, *Insurance Claims & Disputes* §11:30 (5th ed. 2007).

It is likewise important to distinguish the question of whether Sherwood is an additional insured in NES's policy from the question of whether NES breached the subcontract's insurance clause by procuring a policy from AHAC which has a $500,000 SIR. If the SIR was not contemplated in the insurance clause of the subcontract, then Sherwood may have a breach of contract claim against NES, but only if Sherwood is in fact an additional insured under the AHAC policy. St. Paul Fire & Marine Ins. Co. v. American Dynasty Surplus Lines Ins. Co., 124 Cal.Rptr.2d 818, 834-35 (App. 2002) (since general contractor not additional insured in subcontractor's policy, presence of SIR in subcontractor's policy, even if a breach of the subcontract, did not result in any damage to general contractor). Sherwood does not have a claim against AHAC to invalidate the SIR, however. *See e.g.,* Musgrove v. Southland Corp., 898 F.2d 1041, 1044 (5th Cir. 1990).

The Additional Insured endorsement in the AHAC and AISLIC policies amend the definition of insured by adding the following language:

Any person or organization to whom you become obligated to include as an additional insured under this policy, as a result of any contract or agreement you enter into which requires you to furnish insurance to that person or organization of the type provided by this policy, but only with respect to liability arising out of your operations or premises owned by or rented to you. However, the insurance provided will not exceed the lesser of:

1. The coverage and/or limits of this policy, or
2. The coverage and/or limits required by said contract or agreement.

[AHAC 42. See also *Retained Limits Amendatory Endorsement* in the AISLIC policy ¶5, AISLIC 57.]

The basic requirement for additional insured status under these endorsements in Illinois and elsewhere is that Sherwood's liability to the Canadian County plaintiffs had to arise from the operations of NES, i.e., the performance by NES of its subcontract with Sherwood. *See e.g.,* St. Paul Fire & Marine Ins. Co. v. American Dynasty Surplus Lines Ins. Co., 124 Cal.Rptr.2d at 833; Marathon Pipeline Co. v. Maryland Cas. Co., 243 F.3d 1232, 1239-40 (10th Cir. 2001); TIG Ins. Co. v. Insurance Corp. of NY, 2004 WL 1687925 at *4 (Cal.App. July 29, 2004).

However, since Sherwood settled the Canadian County cases, there was no actual determination of its liability which might shed some light on whether its liability arose out of the operations of NES. In this circumstance the general rule is "if an insured settles an underlying claim prior to verdict, it must show that it settled an otherwise covered loss in 'reasonable anticipation of liability'". United States Gypsum Co. v. Admiral Ins. Co., 643 N.E.2d at 1244, *quoting from* West America Mortgage Co. v. Tri-County Reports, Inc., 670 F.Supp. 819 (N.D. Ill. 1987). See as well, Federal Ins. Co. v. Binney & Smith, Inc.,

February 21, 2011
Page 18


913 N.E.2d 43, 48 (Ill. App. 2009) *rev. den'd* 920 N.E.2d 1072 (Ill. 2009). The person claiming to be an additional insured has the burden on this issue. Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co., 611 F.3d 339, 352 (7th Cir. 2010) (Ill. law).

A most telling piece of evidence as to the motivation for the decision of Sherwood and its insurers, Liberty Mutual and Great American, to settle the Canadian County cases, is contained in the March 20, 2007 letter signed by all counsel for the Canadian County plaintiffs, addressed to the lawyer hired by Liberty Mutual to defend Sherwood (AHAC/AISLIC 149). In this letter the Canadian County plaintiffs refute the assertion of Sherwood "that it did nothing wrong and should bear no liability", first, by pointing out Sherwood breached its own contract with ODOT by failing to develop and implement a master traffic control plan prior to any work commencing on the I-40 project. The lack of a master traffic control plan was also a major criticism of Sherwood by the Benham Group, which had evaluated the I-40 project at ODOT's request.

This single failure of responsibility, even if it was ultimately characterized as amounting to only 1% negligence in causing 4 deaths and an injury, would be enough to expose Sherwood to significant liability. This is because, at the time, tortfeasors were jointly and severally liable under Oklahoma law, regardless of their relative percentages of negligence, so long as the plaintiffs (or their decedents) were not at fault. *See e.g.,* Boyles v. Oklahoma Natural Gas Co., 619 P.2d 613, 616 (Okla. 1980); Anderson v. O'Donoghue, 677 P.2d 648, 653 (Okla. 1983), both cited in the March 20, 2007 letter. There is no evidence the people who were burned in their cars or the injured person who survived, Tyrell, were negligent in any respect. Thus, one can objectively conclude Sherwood was potentially exposed to liability for the total amount of damages in the Canadian County cases (minus the amounts of settlements paid by other defendants), upon a finding that its failure to perform its contractual obligation to develop a master traffic control plan for the entire construction project, to be presented to and approved by ODOT **before** construction started, was a cause in fact of the deaths and injury.

The obligation to develop a master traffic control plan was Sherwood's. **The operations of NES did not start until after this plan should have been developed by Sherwood and submitted to ODOT for approval.** Consequently, AHAC and AISLIC reasonably could have concluded that any liability of Sherwood, based on its failure to develop and submit a mater traffic control plan to ODOT for approval prior to the beginning of construction, did not arise out of the operations of NES (since no such operations were being conducted at the time the master traffic control plan should have been developed and approved). Accordingly, AHAC and AISLIC could also reasonably conclude that Sherwood was not an additional insured in the NES policies they issued.

## XIII.  MISCELLANEOUS CONSIDERATIONS.

Depending on the precise nature of the bad faith allegations, other considerations come into play as well. For example, to the extent Sherwood is seeking to recover (for the benefit of Liberty Mutual) the cost of defending Sherwood in the Canadian County cases, Oklahoma law may well not allow for such reimbursement, on the theory the duty to

February 21, 2011
Page 19

defend is independently owed by each insurer having such a duty. *See e.g.,* Fidelity & Cas.
Co. of NY v. Ohio Cas. Ins. Co., 482 P.2d 924, 926 (Okla. 1971); United Serv. Auto.
Assoc. v. State Farm Fire & Cas. Co., 110 P.3d 570, 573 (Okla. Civ. App. 2005).
However, this is not the law in Illinois nor in the majority of states. *See e.g.,* Forum Ins.
Co. v. Paragon Ins. Co., 711 F.Supp. 909, 913-14 (N.D. Ill. 1989).

Secondly, if Sherwood is claiming bad faith in failing to settle the Canadian County
cases on its behalf, there is no evidence that Sherwood suffered any damage in the nature
of excess uninsured liability.  If there was no possibility of an uninsured exposure in
excess of policy limits, and in fact no settlement was made in excess of applicable policy
limits, then there is no bad faith claim for failing to settle. *See e.g.,* Milroy v. Allstate Ins.
Co., 151 P.3d 922, 927-29 (Okla. Civ. App. 2007).

Thirdly, it is difficult to discern what the damages Sherwood is claiming as a result of
alleged bad faith.  Damages caused by bad faith conduct are an essential element of a bad
faith claim.   Badillo v. Mid-Century Ins. Co., 121 P.3d 1080, 1093 (Okla. 2005).
Sherwood doesn't appear to be out any money for defense costs; Liberty Mutual paid them.
Likewise, it appears Liberty Mutual and Great American contributed to make the payments
to settle the Canadian County cases.  Thus, at least at this point I see no evidence that
Sherwood has suffered a pecuniary loss as a result of the fact that its insurers defended it
and its insurers settled the Canadian County cases, except possibly its deductible in the
Liberty Mutual policy (if it was actually paid). *See e.g.,* Matsushita Elec. Corp. of Am. v.
Home Ind. Co., 907 F.Supp. 1193, 1199 (N.D. Ill. 1995) (insured could not recover as
damages from nondefending insurer its defense costs recouped from other insurers).

Very truly yours,

Mort. G Welch

Mort G. Welch

MGW:vm